ABIJAH H. PIERCE & another *vs.* WILLIAM PARKER.

Parol evidence is admissible to identify a note which is provided for by an assign-
ment of the maker's property, but which is misdescribed in the schedule annexed
to the assignment.

A. indorsed promissory notes and bills of exchange for the accommodation of B., and
before they fell due B. failed and made an assignment of all his property for the
benefit of his creditors : In this assignment A.'s liabilities for B. were set forth, and
A. was placed among the preferred creditors : A. and others accepted the assign-
ment and released all their several debts, dues, claims and demands against B. :
B.'s property, which was assigned, was insufficient to pay the preferred creditors
in full, and the proceeds thereof were divided among those creditors. *Held*, that
the release discharged B. from any further liability to indemnify A. against the
indorsements of said notes and bills.

INDEBITATUS ASSUMPSIT for money paid, &c. The par-
ties submitted the case to the court on a statement of facts, in
substance as follows : In 1833, the plaintiffs indorsed certain
promissory notes and bills of exchange for the accommodation
of the defendant, to the amount of $ 17,500. Before any of
those notes or bills. came to maturity, to wit, on the 23d of
January 1834, the defendant having failed, an indenture was ex-
ecuted between him, and certain trustees, and his creditors, in
which it was recited that the defendant was "indebted to the
parties of the third part, in divers sums of money ; that some of
the persons, parties of the third part, and liable, as indorsers or
sureties, to pay, on account of the defendant, several other
large sums of money, which debts and liabilities the defendant
was unable fully to pay as the same should become due ; and
that it was proposed and agreed that he should · assign his prop-
erty for the benefit of his creditors," in consideration of the
premises and of a nominal pecuniary consideration ; and the
defendant thereby assigned all his property to said trustees, in
trust ; *first*, to sell the property, collect the debts, and from the
proceeds retain sufficient to pay the expenses of executing the

trust ; and *secondly,* to pay the several persons and corporations thereinafter named, (they becoming parties thereto,) the full amounts set against their names respectively, and apply the said funds to indemnify them against the liabilities thereinafter named, and to pay them the balances of account, which might be due, or become due, by reason of negotiations and transactions between them, or any of them, and the defendant. *First :* The Commercial Bank to be paid in full the balance due them for loans made to the defendant, and negotiations with him *Second :* The plaintiffs to be paid and indemnified for their indorsement of various notes of hand for the defendant, and assuming various liabilities for him. Other creditors were then named, most of whose demands were specified, and some of whom were to be indemnified against liabilities. Then followed this clause : " It being agreed and understood, that the trustees shall pay the Commercial Bank and the said several persons, (they becoming parties hereto,) the full amount of the sums set against their names above, with interest, as is abovementioned, and fully indemnify the other persons abovenamed against all losses, payments and damages, from having assumed the liabilities aforesaid for the said Parker, if sufficient funds shall be received from said sales and collections, and remain for that purpose : Otherwise, the bank and the said several persons, parties hereto, to be paid ratably and in proportion to their respective demands against, and liabilities for, the said Parker."

Provision was then made, *thirdly,* that the residue should be paid ratably among the other persons and corporations that might become parties to the indenture, and the surplus, if any, to the said Parker. A schedule was annexed to the indenture, and declared to be a part thereof, " showing the amount of the demands of the creditors of William Parker, party of the first part, against him, and the liabilities for him, which are thereby preferred." In this schedule, the notes and bills of exchange indorsed by the plaintiffs were mentioned and correctly described— except a note for $1000, dated October 18th 1833, and payable *April* 21st 1834, which was described, in said schedule, as payable *May* 21st 1834.

The indenture contained a clause of release, in these terms : " And the several persons and corporations, parties hereto of the third part, each for himself and his respective heirs, executors, administrators, copartners and assigns, in consideration of the foregoing conveyance and covenants, do hereby affirm and approve of the foregoing assignment to said parties of the second part, and of the terms and conditions thereof ; and do hereby covenant with said Parker, his executors and administra tors, that they will severally accept the said assignment and the proceeds, to be disposed of in the manner hereinbefore provided ; and they, the said corporations, and the several persons, parties hereto of the third part, hereby severally release and forever discharge all their several and respective debts, dues, claims and demands against the said William Parker."

At the time of the making of said indenture, the Commercial Bank were the holders of the notes and bills which were indorsed, as abovementioned, by the plaintiffs for the defendant, to the amount of $ 9900, one of which, for $ 1200, was de livered up to the plaintiffs, by the bank, soon after the indenture was made, on payment of that sum ; and it is now held by the plaintiffs.  Upon the other notes and bills, the plaintiffs paid, as indorsers, fifty per cent. on the principal and interest, (being $ 4529·26,) under an agreement that the bank should make no further claim upon them ; and that if the bank should receive a dividend from the effects of Parker, or from other parties, more than fifty per cent., the excess should be to the use of the plaintiffs.

At the time when the indenture was made, other banks or persons, not parties thereto, held notes or bills of exchange indorsed by the plaintiffs for Parker, as aforesaid, amounting to the further sum of about $ 7500, which have been delivered up to the plaintiffs, by the respective holders, on payment thereof ; and they are now held by the plaintiffs.

The plaintiffs, on the 11th of December 1835, received from the assignees, under the abovementioned indenture, a dividend of twenty per cent. on the sum of $ 14,193·63, upon the notes and bills aforesaid, held by others than the Commercial Bank :

And said bank, pursuant to the agreement made with the plain‑ tiffs, received from said assignees a dividend of twenty per cent upon the notes and bills held by the bank. No other dividend has ever been made.

All the abovementioned papers were made part of the case.

The plaintiffs seek to recover, in this action, the amount which they have paid to exonerate themselves from their liabili‑ ties, including costs, interest, &c. deducting the amount they have received. Defendant to be defaulted, if the plaintiffs are entitled to recover the amount paid by them to the Commercial Bank, and the amount paid to others, or either of them : Oth‑ erwise, the plaintiffs to become nonsuit.

*B. Rand*, for the plaintiffs.

*Blake*, for the defendant.

Hubbard, J. This is an action of assumpsit upon the com‑ mon money counts, to support which the plaintiffs introduced sundry promissory notes, and bills of exchange.

The defence rests upon the release contained in an indenture made between the defendant of the first part, R. G. Shaw and others, his trustees, of the second part, and the plaintiffs and others of the third part. At the time of the making of this in‑ denture, all the notes given in evidence in the case were out‑ standing, and in the hands of third persons ; since which, by payments, in whole or in part, and by various compromises, they have come into possession of the plaintiffs, who seek to recover of the maker, whose indorsers they were, the amount paid thereon by them.

The terms of the release are as follows : [Here the release was recited as above.]

In reply to this defence, the plaintiffs contend, as to one of the notes of one thousand dollars, that it is not embraced in the release, and so, as to that, there is no defence ; and in regard to the residue of the claim, that at the time of making the in‑ denture they had no such existing cause of action or claim against the defendant, as could be the subject of the release, which barred only existing demands.

The facts in relation to the note of $ 1000 are these : The

note is described, on the schedule, as dated October 18th 1833, and payable May 21st 1834 ; when it was in fact payable April 21st. And here the plaintiffs argue, that as the description of the note is perfect in itself, we cannot go out of the instrument to correct the mistake, if there is one ; and that parol evidence is inadmissible to identify the note.

The law is well established, that parol evidence is inadmissible to vary the terms or construction of a written contract, or to substantiate a defence against a note which is inconsistent with the tenor thereof. Bayley on Bills, (1st Amer. ed.) 336, and cases there cited. But in the case before us, the evidence is not offered to vary the written contract, but to show that there was a misdescription of the time of payment of the note, in the schedule annexed to the assignment, which happened through inadvertence. And it is a well settled principle of law, that where an instrument, which is offered to prove the subject matter described, differs in one or more particulars from the thing described, evidence is admissible to show their agreement or identity, notwithstanding such misdescription : As where there is a mistake in the description of land intended to be conveyed, by the addition of some circumstance which is false. In such a case, C. J. Parsons says, in *Worthington* v. *Hylyer*, 4 Mass. 205, " if the description be sufficient to ascertain the estate intended to be conveyed, although the estate will not agree to some of the particulars in the description, yet it shall pass by the conveyance, that the intent of the parties may be effected." And so where the mistake is in the description of the person, evidence is admissible to prove such mistake, and to show who was actually intended. *Willis* v. *Barrett*, 2 Stark. R. 29. Besides ; we find, on referring to the indenture, a provision " that such alterations and additions in and to the schedules hereto annexed, may be made by the mutual consent in writing of one of each of the parties hereto, as shall be necessary for a more perfect and correct statement of the matters and things herein contained." It seems certain, therefore, that the parties, in addition to what the rules of law might prescribe in regard to averting the ill effects of misrecitals, did expressly agree that al-

terations and additions might be made for the purpose of rendering the statement correct. And the plaintiffs admit, that if such evidence can be received, the mistake can be clearly proved. This ground of objection, then, to the defendant's answer, fails, and this particular note stands on the same footing with the others offered in evidence to support the money counts *Bryant* v. *Russell*, 23 Pick. 530. *Dedham Bank* v. *Richards*, 2 Met. 105.

We are next to consider the question whether, at the time of making the indenture, the plaintiffs had any such existing right or claim against the defendant, as could be the subject of the release. The plaintiffs contend, that the mere liability to pay a debt for another is not such a demand as is embraced within a common release ; and that there is nothing in the instrument to show that the plaintiffs intended to take a dividend of the property in satisfaction of their liabilities. To support the legal position assumed, the plaintiffs rely on sundry cases, the most important of which will be briefly alluded to.

*Hoe's case*, 5 Co. 70. In an action of debt brought by Hoe, one Marshal was bail for the defendant, and afterwards, and before any judgment rendered, the plaintiff released to Marshal all actions, duties, and demands. Afterwards judgment was given against the defendant, and on his default a *scire facias* issued against Marshal, who pleaded the general release. " It was adjudged that this release should not bar the plaintiff; for the words of the bail are conditional, so that there can be, by the said bail, no certain duty till judgment be given ; for before that, none can know to what sum the debt and damages will amount ; and therefore there is a difference between a certain duty on condition subsequent, (for that may be released before the day of performance of the condition,) and a duty uncertain at first, and on condition precedent, to be made certain after ; that, in the mean time, is but a mere possibility, and therefore cannot be released ; for this recognizance doth not create a duty presently, but shall produce a duty after, on a *contingat.*" But this is clearly distinguishable from the case at bar, where, if upon demand made the maker does not pay the note, the indorser, upon

notice, is charged with the demand ; so that in his case there is a certain duty on a condition subsequent. But in the case cited, it is uncertain whether any judgment will ever be rendered, or what will be its amount ; so that the one is but a possibility, while the other, being a certain duty on a condition subsequent, it would seem to follow from the reasoning of the case, might be the subject of the release.

The case cited from Cro. Jac. 170, *Hancock* v. *Field*, was an action of covenant on a lease, by which the plaintiff let a house for years to the defendant's testator, and the lessee covenanted, among other things, to leave the house in good repair at the end of the term. The defendant pleaded that the plaintiff, within three days after the date of the indenture, released to the testator all debts, duties and demands. The truth was, that the plaintiff had recovered £ 6 damages and costs against the testator, and made an acquittance, upon receipt thereof, with a general release of all actions, duties and demands, which was pleaded in bar, to which there was a demurrer. The court resolved that it was not any bar ; "for being a covenant future, and not in demand at the time of the release made, but to be performed at the end of the lease, this release, although it be of all demands, which is the most general word in releases, yet," the court said, "*there appearing not any intent* to release it, it cannot therefore be any bar." The court added : "But if he had released all covenants in such an indenture, that had been a bar." The case cited from 2 Show. 90, *Carthage* v. *Manby*, was covenant for payment of money at a future day ; and the defendant pleaded a release, made before the day, of all debts, dues, actions and causes of action, bills, obligations, writings obligatory, &c. Demurrer thereto. The court held that "the release of all writings obligatory did not release covenants not broken, *for that is releasable only by special name ;* and although a covenant be a writing obligatory, yet it has a particular signification, as when we declare *per scriptum obligatorium*, it means no more than a bond ; and demands will not reach it, for that will not release a rent before it is due ; as was adjudged in Lord Hale's time."

These two last cited cases, while they prove that a common release of all debts, dues, demands, actions and causes of action, will not bar an existing covenant not in demand or broken at the time of the release ; yet they do not go the full length of deciding that a covenant of such a nature cannot be released ; but, on the other hand, they do virtually decide that a covenant future, or not in demand at the time of the release, may be barred by such release, if it be the intent of the parties to release it, and it be done by special name.

. The plaintiffs also rely on the case of *Cuyler* v. *Cuyler*, 2 Johns. 186. That was assumpsit, tried September 1806. The plaintiff declared on a promissory note dated May 13th 1803, made by the defendant payable to the plaintiff in nine months. The note. had been indorsed by the plaintiff, and delivered tc one Smith, as security for a debt due to him from the defendant ; and the plaintiff, as indorser, paid the note. The defendant gave in evidence a writing dated February 10th 1804, executed by the plaintiff and one John C. Cuyler, in which they bound themselves to the defendant in a penal sum, with a condition not to institute any suits against him, unless on a future contract, either as partners or separately, and that the plaintiff should discontinue his suit and no more prosecute the same. The judge, at the trial, charged the jury, that the writing given in evidence by the defendant, would not operate as a release of the note on which the plaintiff had brought his action ; but the court held that the bond was equivalent to a perpetual covenant not to sue the defendant upon any demand then existing.

" Such a covenant," say the court, " amounts to an absolute release. This construction has been adopted by courts, to avoid circuity of action. The plaintiff prosecutes upon the note itself, given by the defendant to him, which bears date nine months before the bond set up as a release. We therefore cannot take into consideration the circumstance that the note was given for a debt due from the defendant to Smith, for which the plaintiff became surety, and was obliged afterwards, and after the date of the bond, to pay to Smith." But the court added, what the plaintiffs in the present suit rely on : " Had the suit

been for money thus paid as surety, the cause of action would have arisen subsequent to the date of the bond, and would not have been affected by it. The bond being given by the plaintiff and another will not prevent its application to the present action. They covenant not to sue either as partners or separately." So in the case at bar, the plaintiffs contend that they have brought their action for money paid for the defendant on notes indorsed for his accommodation, and which payments were made after the execution of the release. The closing observations of the court certainly lean very strongly in favor of the plaintiffs' right to maintain this action. But it is to be observed that the suit was not for money paid, but upon the note itself; and therefore the question, upon which the opinion was expressed, was not before the court for their adjudication. It has not, therefore, the force of a judicial decision. Again; it is to be noticed, that the release in that case was not in its terms absolute. It contained a condition " not to institute suits against the defendant, unless on a future contract, either as partners or separately, and that the plaintiff should discontinue his suit, and no more prosecute the same." There was a reference to future contracts which might have been connected with the payment of the note in question. Besides; the release is not set out at large in the report of the case, nor do we know the nature of the suit which is referred to in the release, and therein agreed to be discontinued, and which was prior in time to the falling due of the note declared on. And the release, though general in its terms, might in fact have been given in reference to the then existing controversy between them, and not have been intended to apply to the outstanding note. So far, therefore, as appears, there is nothing to show that the release was given to bar the note, or that it was the subject of their settlement when the release was made. But if it was given in reference to the note, among other things, with intent to release the same, and the learned court so understood it, when they expressed their opinion that it would bar an action on the note itself, but not an action for money paid to take up the note, then I cannot agree to this technical distinction — a distinction not warranted, I think, by later authorities.

From the best examination I have been able to give to the question before us, I come to this conclusion ; that while a possibility merely is not the subject of a release, yet that in all cases where there is an existing obligation or contract between parties, although such obligation or contract is executory and dependent also upon contingencies that may never happen, still, if the party, in whose favor such obligation or contract is made, or who is liable, by force of it, to suffer damage if it is not performed by the other when the contingency happens, shall execute a release of all claims and demands, actions and causes of action, &c. correct in point of form, and having at the time of executing the release such obligation or contract in view, as one of the subjects upon which the release shall operate, then such release shall be held as a good and valid bar to any suit which may be afterwards brought upon such obligation or contract, or for money had, received or paid, upon the future happening of the contingency, in consequence of which the plaintiff sustains damage, and but for such release would have had a perfect right of action.

Within this principle the case at bar falls. Here the plaintiffs were liable, as indorsers or sureties, to pay, on account of the defendant, certain large sums of money (which he would be unable fully to pay and discharge, as the same should become due,) on receiving due notice of non-payment. These notes, on which the plaintiffs were thus liable, are inserted in a schedule, in detail. The defendant then assigns all his property to trustees, for the express purpose, after paying the expenses of the trust, and the amount due to the Commercial Bank, as follows : " Second. Pierce & Goodnow to be paid and indemnified for their indorsements of various notes of hand for the said Parker, and assuming various liabilities for him ; the amount to be ascertained as soon as may be." The notes, which are the subject of the present suit, are a part of those embraced in this provision : And then, " in consideration of the foregoing conveyance and covenants," the plaintiffs, among others, " do hereby affirm and approve of the foregoing assignment to said parties of the second part, and of the terms and conditions

8 *

thereof, and do hereby covenant with said William Parker, his heirs and administrators, that they will severally accept the said assignment and the proceeds, to be disposed of and distributed in the manner hereinbefore provided ; and they, the said corporation and the several persons parties hereto of the third part do hereby severally release and forever discharge all their several and respective debts, dues, claims and demands against the said William Parker."

The contingent claims of the plaintiffs were then specifically embraced and provided for. There was an agreement between the parties, in relation thereto, in the nature of an accord and satisfaction, and a release consequent upon such agreement, and with the full understanding that the plaintiffs, if able, were liable to and might be compelled to take up and pay their indorsements. The mere fact, then, that the claims were contingent, cannot take them out of the operation of the release ; otherwise, they would be, in the quaint but expressive language of the counsel for the defendant, " in, for the dividends, but out, for the release " ; which would be inequitable to the defendant, and surely contrary to his intention in making the assignment. It is true, technically, that the present cause of action arises out of moneys paid for the defendant subsequent to the execution of the release, and so apparently not embraced within it ; but the cause of action in fact grows out of contracts between the parties, which existed and were embraced in the indenture and release, and which contracts are so far the ground of the present suit, that without the evidence resulting from them, no claim could be established against the defendant.

These principles are fully supported in the cases of *Scott* v. *Lifford*, 1 Campb. 249, and *Coe* v. *Hutton*, 1 S. & R. 398. The first of these was an action by the payee against the drawer of a bill of exchange. To prove the facts in the case, the acceptor of the bill was offered as a witness on the part of the defendant. Being examined on the *voire dire*, it appeared that after the bill was due he had become bankrupt, and had obtained his certificate. The counsel for the plaintiff therefore objected to his competency, as he was no longer liable to the payee of

the bill, but still would be so to the drawer, after the latter should be compelled to pay by that action, which it was thus his interest to defeat. The objection being allowed, the defendant executed a general release unto him, his heirs, &c. of all actions and causes of action, &c. which the defendant then had, or which he, his heirs, executors, &c. should or might, at any time thereafter, have against said acceptor, for or by reason of any matter or thing whatsoever, from the beginning of the world unto the day of the date of the said writing of release. The plaintiff's counsel contended, that this did not discharge the acceptor from the consequences of the action then pending, and therefore did not restore his competency; that the release could only extend to causes of action which had already accrued; but the defendant had as yet no cause of action against the witness, and would have none until there should be a verdict and judgment against him as drawer of the bill. Lord Ellenborough however held, "that this release of all causes of action, for or by reason of any matter or thing which had happened down to the present moment, would discharge the acceptor of the bill from all liability to the drawer, whatever might be the event of the suit. The transaction was already past, which was to lay the foundation of future liability; and if the drawer of the bill should have a cause of action against the acceptor, it would have reference back to the acceptance, and would be discharged by the release." And so in the case of *Coe v. Hutton*, 1 S. & R. 398, which was an action against a surviving partner for money paid by the plaintiff for the use of the firm, and money received by them for his use. The plaintiff gave in evidence a promissory note for $ 800, drawn by the firm in his favor, and indorsed by him. The defendant relied upon a release executed by a number of creditors, and among others by the plaintiff, in bar of the action. The plaintiff replied, that as the note did not become due till after the date of the release, of course there was no existing debt or demand of any kind, upon which the release could operate. But Tilghman, C. J. said, "the release is drawn in words as comprehensive as possible, and was undoubtedly intended to reach this debt; so that

it is the duty of the court to support it if possible. It is a release of all actions, causes of action and demands, which the releasor then had, or might in future have, against the defendant, by reason or means of any act, matter, cause or thing, from the beginning of the world to the date of the release. Now the present action cannot be supported, but by reason of the note, which was given before the release. It cannot be shown that the plaintiff paid money on account of the defendant, without producing that note ; and accordingly it was given in evidence on the part of the plaintiff. If not a release, technically speaking, it would amount to an agreement not to sue, which answers the defendant's purpose as well. To say that a man, who knows he is liable to pay a sum of money, on any account, may not bind himself not to have recourse to one, after he shall have paid the money, is in my mind unreasonable to the highest degree. Some of the old cases go a great way against such a release ; but of late there has been more liberality of principle."

A further examination of cases might be made, and a comparison be instituted between them and the case at bar. But it seems to be unnecessary ; it being clear, in our opinion, that the plaintiffs did intend, by their release, to discharge the defendant from the payment of the notes which are the subject of the present suit, and that such release can be legally enforced by him.

*Plaintiffs nonsuit.*